Charles W. **STRZALKOWSKI**, and Auros Electronic Corporation, Plaintiffs-Appellants,

v.

**BELTONE ELECTRONICS CORPORATION**, Defendant-Appellee.

No. 15496.

United States Court of Appeals Seventh Circuit.

Dec. 6, 1966.

Timothy L. Tilton, Chicago, Ill., S. Lawrence Wheeler, Allan B. Wheeler, Milwaukee, Wis., for appellants.

Sheldon W. Witcoff, D. D. Allegretti, Chicago, Ill., for appellee.

Before CASTLE, SWYGERT and CUMMINGS, Circuit Judges.

CASTLE, Circuit Judge.

Charles W. Strzalkowski, the owner of Strzalkowski U.S. Patent No. 3,035,127,[1] and Auros Electronic Corporation, the owner of Holt U.S. Patent No. 2,999,136 [2] and the exclusive licensee of the Strzalkowski patent, plaintiffs-appellants, brought suit in the District Court charging the defendant-appellee, Beltone Electronics Corporation, with infringement of Claim 13 of the '127 patent and Claims 1, 2, 7 and 13 of the Holt patent. The defendant counterclaimed for a declaratory judgment that, among other things, both of the patents are invalid and are not infringed by the defendant's accused devices. The District Court, following trial of the issues of validity and infringement, filed a memorandum of decision which incorporates the court's findings of fact and conclusions of law, and entered an order adjudicating that Claim 13 of the '127 patent has not been infringed by the defendant, that Claims 1, 2, 7 and 13 of the Holt patent are invalid, and awarding judgment to the defendant ac-

---

1.  Referred to herein as the '127 patent.

2.  Referred to herein as the Holt patent.

cordingly. The plaintiffs-appellants appealed.

Both of the patents relate to electrical hearing aids, and the claims in suit are directed to the behind-the-ear type of aid —one in which part or all of the components are contained in a small case worn behind the ear and supported entirely by the ear. The record discloses that the components of such a hearing aid normally include a microphone for picking up the sound, an amplifier circuit, a battery for electrical power, and a receiver or speaker for supplying the amplified sound to the user. A tube conveys the amplified sound from the receiver to the ear canal and through an ear canal insert plug to the ear drum.

Claim 13 of the '127 patent reads as follows:

"In a hearing aid applicance adapted to be worn by the user to receive support from his outer ear and to deliver sound to his ear canal, the combination with arcuate supporting means for partially encircling the outer ear, of a hearing aid sound reproducer including a microphone, an amplifier, a receiver, and electrical connecting means, and having its receiver mounted on said supporting means, said supporting means having a sound communicating duct so positioned as to lead toward the auditory canal of a person wearing said supporting means upon his outer ear, said duct leading forwardly above the level of the lower end of the outer ear, and an ear canal insert having a flexible sound tube and having an opening extending through the insert, said tube and said supporting means having sound conduit coupling means for detachably connecting said flexible tube in sound-receiving engagement with said duct."

Claim 1 of the Holt patent is limited to a housing for a behind-the-ear hearing aid and it features a limitation requiring that the housing be elongated and longitudinally curved to conform generally to the back of the ear. Claim 2 brings out that all of the elements of the hearing aid are mounted in a casing in which the means for suspending the casing directly from the ear includes a tubular conduit. Claim 7 defines the housing as comprising a body of substantially rectangular cross section and having an extension and specifies that the back of the body portion includes a removable plate and that the extension is secured to the end of the housing adjacent the removable plate. Claim 13 is similar to Claim 7 with an additional reference to a battery "slide" or drawer adapted to contain a battery and to permit its removal.

The District Court found and concluded, in substance, that the defendant's accused structures did not infringe Claim 13 of the '127 patent for the reason that neither of two limitations of Claim 13 (an auricolostomy, or surgical opening through the outer ear, and an atmospheric opening in the ear canal insert or plug) is present in defendant's devices, and that the disclosures of prior art are such that if Claim 13 is subject to a broader construction which would eliminate these two limitations then the claim is invalid as not constituting a patentable invention because of obviousness; and that the claims in suit of the Holt patent are likewise invalid for obviousness.

The plaintiffs predicate reversible error upon contentions that the trial court erred in reading limitations into Claim 13 of the '127 patent which are not present therein (and thereby concluding that no infringement existed), and in concluding that absent such limitations the subject matter of the claim is void for obviousness. The plaintiffs assert that the conclusion with respect to the obviousness of Claim 13, and the like conclusion with respect to the invalidity of the claims of the Holt patent, are without factual support in the record.

Critical factual findings of the District Court, supported by substantial evidence, including the testimony of expert witnesses, are that the history of the hearing aid industry is characterized by the constant reduction in the size of hearing aid casings and components to meet the desire of the hard-of-hearing public for

hearing aids as small and inconspicuous as possible. Early hearing aids had to be worn on the body due to their large size and weight. Completely self-contained hearing aids adapted to be worn entirely on the head were known at least twenty-five years ago, as exemplified by Cox U.S. Patent No. 2,207,705, which teaches the embodiment of all the component parts of a hearing aid in the frames of eyeglasses. Head-worn aids are advantageous in eliminating the clothing noises associated with body-worn aids. Likewise, it has long been known to support a portion of a head-worn hearing aid behind the ear of the user. Rohr U.S. Patent No. 2,513,746, and French U.S. Patent No. 2,545,731, each disclose hearing aid supports in which the receiver of the hearing aid is located behind the user's ear and the sound therefrom is carried to the ear canal by means of a sound tube extending over or around the ear. In 1952 the introduction of transistors for use in hearing aids, and the subsequent miniaturization of the other hearing aid components, such as the microphone, receiver, battery, volume control and the like in the years that followed enabled the entire hearing aid assembly and casing to be reduced in size sufficient to be supported entirely within eyeglass temple members or behind the ear, in accordance with the earlier teachings and desires of the prior workers in the hearing aid art. The electrical circuitry and component parts of the hearing aids shown in the patents in suit were old and well known in the prior art and do not form any part of the alleged inventions claimed for either patent. Neither Strzalkowski nor Holt made any contribution to the development of transistors or the miniaturization of the other components.

On the basis of evidence concerning the introduction and commercial production of behind-the-ear aids containing all of the components and entirely supported on the ear the court concluded that widespread and contemporaneous marketing of such behind-the-ear aids by the industry established that the commercial realization of these devices resulted from the miniaturization of parts rather than from any contribution made by the patentees of the patents in suit.

There is expert testimony which supports the court's additional findings that the file wrapper history and the specifications of the '127 patent require that Claim 13 be construed as limited to an auricolostomy type behind-the-ear hearing aid (one in which the sound conduit tube passes through a surgically made opening in the outer ear to reach the ear canal) and that there be an atmospheric opening through the insert plug in addition to the opening accommodating the sound conduit tube. Thus, on the record, there is no basis for rejecting either of these findings as being "clearly erroneous", and these two limitations negate infringement of the '127 patent by defendant's devices which make use of neither. But if, as plaintiffs contend, the proper construction to be accorded to Claim 13 of the '127 patent does not admit of the presence of such limiting features then, in any event, we wholly agree with the District Court's conclusion that absent such limitations Strzalkowski's sole contribution was but a relocation of old elements which did not constitute patentable invention. The record discloses that ordinary skill in the art recognized the desirability of head-worn aids. Consequently, Strzalkowski's concept of including all of the components in a case worn inconspicuously behind the ear and supported solely by the ear, an arrangement made possible by the contemporaneous but independent developments in the miniaturization of components, represented only an application of mechanical skill to achieve a most desirable but then obvious improvement. As such it did not constitute patentable invention under the requirements of 35 U.S.C.A. § 103. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545; Toro Manufacturing Corporation v. Jacobsen Manufacturing Company, 7 Cir., 357 F. 2d 901; Hamilton Manufacturing Co. v. Illinois Surgical Supply Co., 7 Cir., 193 F. 2d 938. The mere relocation of old elements, producing no new or unexpected

240

result, is not invention. Glikin v. Smith, 5 Cir., 269 F.2d 641, 653.

In Claims 1 and 2 of the Holt patent the tubular sound conduit is featured as the means for suspending the hearing aid housing or case directly from the ear. Claims 7 and 13 call for an extension of the housing. The plaintiffs assert that the patent claims as an improvement the concept of supporting the case from the ear by means of this extension which intervenes between the case itself and the sound tube, and that this feature of utilizing an extension of the case itself to provide the support was not known in the prior art and is used by the defendant in its device.

The prior art French patent (U.S. Patent No. 2,545,731) is specifically directed to the use of the sound tube, positioned to extend over the ear, to provide the support for a behind-the-ear hearing aid receiver. When miniaturization of components permitted use of the over-the-ear sound conduit tube to support a housing containing all of the components, rather than the receiver alone, the French patent made it obvious to do so. To utilize an extension of the housing itself, rather than the sound conduit tube, to provide the over-the-ear support was but a simple mechanical substitution equally obvious once miniaturization of components permitted mounting the entire device on the ear.

The French patent was not before the patent office in either the Strzalkowski or the Holt patent. Thus the statutory presumption of validity attaching to the issuance of a patent is of no aid to the plaintiffs. A R Inc. v. Electro-Voice, Incorporated, 7 Cir., 311 F.2d 508, 512; Hobbs v. Wisconsin Power & Light Company, 7 Cir., 250 F.2d 100.

Absent the limitations the court found in Claim 13 of the '127 patent and which serve to negate infringement by the defendant's devices—and the plaintiffs insist that the claim contains no such limitations—none of the claims in suit of either patent meet the condition of "non-obviousness" contained in 35 U.

S.C.A. § 103 as a prerequisite to patentability. We conclude that the critical factual findings of the District Court find substantial support in the record and that its conclusions of law represent the application of correct legal criteria.

The judgment order of the District Court is affirmed.

Affirmed.